# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JOHN SAMPLES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | |
| v. | ) | No. 05-1375-JTM |
| | ) | |
| ALLEN, GIBBS & HOULIK, L.C., | ) | |
| TRUSTED ADVISORS, LLC, | ) | |
| (Formerly known as AGH WEALTH | ) | |
| MANAGEMENT SOLUTIONS, LLC) | ) | |
| AND BRYAN CAVE, L.L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, John Samples, for his Complaint against defendants alleges and states as follows:

### PARTIES

1. Plaintiff John Samples ("Samples") is an individual residing in Osage City, Kansas.

2. Defendant Allen Gibbs & Houlik, L.C. ("AGH") is a Kansas professional corporation duly authorized to do business in Kansas. Defendant Trusted Advisors, LLC, is a wholly owned subsidiary of AGH, formerly and at times relevant to this Complaint known as Wealth Management Solutions, LLC ("Wealth Solutions"). Both AGH and Wealth Solutions may be served with process by serving their resident agent, Paul S. Allen, 301 N. Main, Suite 1700, Wichita, Kansas 67202-4868.

1

3. Defendant Bryan Cave, L.L.P. is a Kansas limited liability partnership and may be served with process by serving its resident agent, John M. Edgen, Suite 1100, 7500 College Blvd., Overland Park, Kansas 66210-4035.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this case, pursuant to 28 U.S.C.A. § 1331, because Plaintiff alleges one or more violations of Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C.A. § 78j(b), and/or SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated there under.

5. This Court has subject matter jurisdiction over Counts two through four inasmuch as they are pendant state court claims which may be stated herein.

6. This Court has personal jurisdiction over the Defendants because the defendants and each of them are resident business entities registered to do business in Kansas, the allegations of this complaint arise out of business conducted within the state of Kansas and because defendants made alleged omissions and or misrepresentations in this state and/or directed them to plaintiff in Kansas.

7. Venue for this case is proper in this District because all or a substantial part of the events or omissions giving rise to the claim occurred in said district, and because both Defendants maintain their principal office in said district.

## GENERAL BACKGROUND FACTS

8. Samples is a Kansas businessman who, in early 2001, sold his interest in

what has been described as one of the leading modular housing companies in the United States, KanBuild, Inc. Prior thereto, beginning at least in 1989, AGH served as the accounting firm for Samples and the businesses he owned. As represented by AGH in a letter dated September 19, 2001 to HypoVereinsbank, the bank at which an account was to be established for Samples and a wholly owned company named Strathmere Trading, Inc., AGH had "been the accounting firm for both Samples and the related businesses he has had ownership in since 1989. Our services have included (but are not limited to) tax/business advisory services, audited financial statements of some of the businesses, and working closely with his other service providers over the last 13 years." *See* Exhibit 1, attached hereto. Samples routinely communicated with and relied on AGH for the services referenced in this paragraph.

9. During all times relevant, AGH also owned, controlled and operated a wholly owned subsidiary which engaged in providing business advice through and in conjunction with various third parties. This entity is currently known as Trusted Advisors, LLC, and at all times relevant did business under a predecessor name, AGH Wealth Management Solutions LLC ("Wealth Management"). Wealth Management is believed to have had consulting and other arrangements with attorneys, insurance companies and other third parties which were not disclosed to clients of AGH.

10. Samples' dealings with AGH were generally on the basis of mutual discussions conducted in person, by use of the United States mails and by use of telephone transmissions lines. AGH never prepared or presented Samples with an engagement agreement or written document limiting or defining the scope of its employment or various agreements.

11. During the time AGH represented Samples, he relied on the professional skill, representations of skill and abilities, and good faith and professed standards of professionalism espoused by AGH.

12. Following the sale of KanBuild, Samples continued to consult with AGH and in particular sought advice with respect to possible investments for the proceeds of his sale. In this connection he expressed his desire to both make a legitimate and reasonable return on his investment and also, consistent with such goals, to shelter such income from federal and state taxation consistent with legal and regulatory standards.

13. In response to Samples' inquiry, AGH advised Samples with regard to various opportunities in which he could invest the proceeds of the sale of KanBuild into other diversified interests. *See* Ex. 1.

14. Relying on the recommendations, references and inducements of AGH, Samples proceeded to consider investment in offerings known as common trust funds being sold and marketed and promoted by various entities, including an Atlanta Georgia law firm, Cantley and Sedacca, LLP. Samples was referred to Cantley and Sedacca and introduced to the concept of purchasing interests in such trusts by AGH, which advised him with respect to such purchases and which knew that he considered the transaction in order to realize earnings over an extended period of years. *See* Ex. 1.

15. Through the connections, recommendations and advice presented by AGH, Samples received offerings in the Coastal Trading Common Trust Fund Series II ("Coastal II") which, in a private offering memorandum described a sequential process whereby the investor would establish a foreign currency account and ultimately, establish a corporation which would in turn establish a revocable trust and invest in a common

4

trust funds.

16. Coastal II was represented in the private Offering Memorandum, to be "organized in order to facilitate through a complex investment and trading program that seeks to generate not only positive investment performance, but also incidental tax benefits for investors. . . ."

17. The Private Offering memorandum and related documents directed the investor to consult with and rely on professional tax advisors as to the tax consequences of the investments. Samples consulted with AGH in this regard.

18. Pursuant to the plan of investment proposed and directed by various individuals to whom Samples was referred by AGH, he established Strathmere Trading, Inc. (wholly owned by Samples) and Strathmere Investment Trust for the purpose of investing in Coastal II.

19. On or about July 1, 2001, Samples invested $500,000 with Deerhurst Management Company, Inc., designated as a manager of the overall Coastal II scheme. After numerous borrowing and other financial transactions conducted by Deerhurst and others, Samples, acting through the Strathmere Investment Trust, authorized the purchase of 498,231 units of the Coastal II at $1 per share, for a total investment of $498,231.00.

20. In connection with and as a part of the investment in the Coastal II, Samples was billed, and paid, the amount of $200,000 by Cantley & Sedacca, LLP, for the purpose of reviewing the tax ramifications of a common trust fund investment strategy and to have a tax opinion issued by a third party law firm. *See* Exhibit 2 attached hereto. There was no disclosure in the statement of services received from Cantley & Sedacca that any amount of the fee would be paid to any other than Bryan Cave was the

third party firm to which Samples was referred by Cantley and Sedacca for legal advice in the form of a tax opinion regarding the investment in Coastal II. Samples executed an engagement letter with Bryan Cave on December 28, 2001 and also received an opinion letter from Bryan Cave dated December 28, 2001 regarding "federal income tax consequences" of investing in the Coastal II.

21. Of the total investment made by Samples through Strathmere, the amount of $50,000 was transferred to Bryan Cave by the investment managers as legal fees for the opinion letter referenced in paragraph 20.

22. As a result of the investments made in the Coastal II, Samples filed personal income tax return for calendar year 2001 which claimed short term capital losses incurred by Strathmere Trading, Inc. (a sub-chapter S corporation) and/or Strathmere Investment Trust, a partnership which issued a form K-1 to Samples, showing such loss in the amount of $5,123,324.00.

23. Sometime after December 22, 2003, Samples received a letter of that date from Coastal II written to "summarize information that impacts the tax consequences of the Common Trust Fund Transaction" and referencing IRS Notice 2003-54 which addressed common trust fund transactions and stated that the IRS intended to challenge tax benefits. However, the letter on its face stated that it was addressing tax consequences of the common trust fund transaction which Samples entered into in 2002, information confusing to Samples inasmuch as he entered such transactions in 2001. The letter also stated that the investments were "listed" by the IRS, a term indicating that the IRS considered the investments to be abusive tax shelters. Prior to these contacts, Samples neither knew nor had reason to know that the Coastal common trust fund

investment was a questionable or "abusive" tax shelter.

24. Given the information received from Coastal, Samples inquired of AGH and Bryan Cave how such matters should be handled. Both AGH and Bryan Cave refused such requests that they assume responsibility and defense of the tax audit. In connection with such communications and after his investment in Coastal II, Samples learned that AGH had received a type of kick back or referral fee from Cantley and Sedacca, and that of the amount of $200,000 which he paid to Cantley and Sedacca, $75,000 was paid to AGH and/or its wholly owned subsidiary, Wealth Management.

25. On or about April 12, 2005, by way of letter of that date, Samples received a notice from the Internal Revenue Service that his income tax return for calendar year 2001 had been selected for examination and requesting numerous documents in connection therewith.

26. Subsequently, the Internal Revenue Service has issued a proposed settlement for taxpayers such as Samples who were advised to invest in abusive tax shelters such as the Coastal II, such settlement requiring the payment of tax liabilities on all amounts claimed as deductions, interest and a 20% penalty. As of the date of filing, acceptance of the proposed settlement is under consideration by Samples.

**Count 1 – Claim for Securities Fraud Against AGH and Wealth Management**

Paragraphs 1 through 26 are incorporated herein as if set forth fully and in their entirety. Plaintiff further alleges:

27. At the time Samples purchased the subject interests in Coastal II he did so in reliance upon and as the result of information, advice and contacts provided by AGH. In this process, AGH omitted or failed to disclose the following facts to Samples:

  a. That AGH and Wealth Management had a prior arrangement with Cantley and Sedacca to market and or refer customers to Cantley and Sedacca for the purpose of making investments in common trust funds;

  b. That AGH had an agreement with Cantley and Sedacca to receive a type of kick back, referral fee or share of the fee which Samples paid Cantley and Sedacca in connection with his purchase of securities, namely the Coastal II;

  c. That AGH received $75,000 either paid directly to it or derived from a payment to its wholly owned subsidiary, Wealth Management, in payment for referring Samples to Cantley and Sedacca;

  d. That AGH had arrangements with Cantley and Sedacca and/or others acting on its behalf for the marketing of common trust fund investments; and

  e. That AGH worked through an undisclosed wholly owned subsidiary, namely Wealth Management, for the purpose of generating referral fees of the type received in this transaction.

28. Samples decided to purchase the common trust funds in justifiable and reasonable reliance on the relationship and advice he received from AGH and the omissions or failures to disclose the facts referenced in paragraph 27 were material to Samples' decision to so invest in Coastal II, in that:

  a. Samples understood and believed that the advice he was receiving and the services being performed on his behalf by AGH were being compensated solely by the fees he was paying to AGH;

   b. Samples believed he was receiving independent advice and consulting from AGH which was acting solely in his best interest;

   c. Samples believed and understood that AGH was not receiving any compensation for referring him to or connecting him with Cantley and Sedacca, a fact which would have influenced his thinking and evaluation of the motives and independence of advice being presented and offered by AGH; and

   d. Given the critical tendency of any conflict or competing interest to reduce or diminish the independence of advice given by a professional company, there was more than a substantial likelihood that the facts which AGH failed to disclose and omitted would have been viewed by Samples, defined by AGH as a prudent and careful investor, to have significantly altered the mix of information provided to him; *See* Ex 1; and

   e. The advice given to Samples by AGH, if the omitted information listed in paragraph 27 had been provided to him, would have created a substantial likelihood that Samples' decisions regarding the investment in Coastal II would have been altered.

  29. AGH had a duty to disclose such facts to Samples by virtue of its position as a trusted advisor and entity providing extensive tax services to him.  Indeed AGH had a fiduciary duty to Samples under Kansas law and the existence of a conflict of interest or other circumstances such as described in paragraphs 27 and 28 compromised AGH's duty to provide independent advice to Samples.

  30. AGH failed and omitted to make the material disclosures and

representations referenced in paragraphs 27 and 28 in connection with the purchase of securities, namely the investment made in the Coastal II, all as specified, above and in connection therewith used the mails and or other devices and instrumentalities of interstate commerce in communicating with third parties and,

    31.    At the time that AGH induced plaintiff to purchase the subject shares of Coastal II AGH knew or, in the exercise of reasonable care should have known, that the material omission of facts would tend to make such facts as were actually disclosed untrue in that:

    a.    AGH clearly knew that Samples was relying on AGH for its advice and reputation as his accountants in connection with the transactions as evidenced by AGH's letter of September 19, 2001. *See* Exhibit 1.

    b.    AGH knew by virtue of its relationship with Samples that he was looking to reinvest the proceeds of his business not only for the purpose of sheltering income but also for the purpose of making profits, again as specifically referenced in Exhibit 1, the letter of September 19, 2001.

    c.    AGH knew that it would receive a share of the fee paid to Cantley and Sedacca, and also knew that it would be advisable to shield the knowledge of the receipt of business consulting fees (or kickbacks) through separate corporations, such as Wealth Management;

    d.    AGH knew that its conduct was, at a minimum, reckless and/or highly unreasonable in that it represented an extreme departure from the standards of ordinary care in connection with the fiduciary relationship between an accountant and its client, the danger of implicating that

relationship being so obvious that AGH must have been aware of it.

32.     As a direct and proximate result of the conduct of AGH set forth above, Samples has been damaged in the following respects.

    a.     The amount of fees paid to Cantley and Sedacca, AGH and Bryant Cave which would not have been paid but for the conduct of AGH, such amounts equaling $250,000;

    b.     The amount of interest which could have been made on an investment of $500,000, less taxes otherwise paid on such amount if the investment had not been made in Coastal II;

    c.     The loss of the investment, in the amount of $250,000, less legitimate tax consequences on income which might have otherwise been levied on such amount if not invested in Coastal II;

    d.     Interest and penalties charged or determined by the IRS as a result of the investment in Coastal II, an abusive tax shelter, at the suggestion of AGH;

    e.     The amount of attorney and accountant fees incurred as a result and consequence of responding to IRS audits which but for the conduct of AGH would not have been necessary; and

    f.     Such other and further damages as may be determined in the course of litigation and discovery as allowed by law.

33.     As a result of the acts and omissions set forth, AGH and Wealth Management violated section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C.A. § 78j(b), and/or SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, and is entitled to judgment in his

behalf and against AGH, for damages as detailed in paragraph 32 an amount in excess of $750,000.00, together with pre-judgment and post-judgment interest thereon.

### Count 2 – Breach of Fiduciary Duty by AGH

Paragraphs 1 through 33 above are incorporated herein as if set forth fully. Plaintiff further alleges:

34. AGH as accountants and advisors to Samples, all as set forth above, was engaged to prepare Plaintiff's personal income tax returns and provide related advice. AGH had a fiduciary relationship with Samples thus owing him duties of honesty, loyalty, care and compliance with applicable codes of professional responsibility and standards of conduct.

35. Samples reposed confidence in AGH and his relationship with AGH was characterized by an inequity in bargaining strength and knowledge and his dependence upon its greater knowledge, training and experience.

36. The omissions of material facts, receipt of kickbacks or fees from Cantely and Sedacca and other conduct specified above were conflicts of interest and otherwise constituted a breach of fiduciary duties owing to Samples.

37. As a direct and proximate result and cause of the breach of duty by AGH, Samples has been damaged in an amount in excess of $750,000 as detailed above in paragraph 32.

### Count 3 – Negligence by AGH

Paragraphs 1 through 37 is incorporated herein as if set forth fully. Plaintiff further alleges:

38. At the time AGH advised Samples as to both business and tax

consequences and induced him to invest in the Coastal II, it was acting in a professional capacity and owed Samples a duty of competence and professionalism.

39. AGH departed from the standard of care of a reasonably competent certified public account in acting and performing in the manner detailed in the foregoing paragraphs and breached its duties in that regard and committed malpractice.

40. As a direct and proximate cause of the breach of duties and negligence of AGH, Samples has been damaged in an amount in excess of $750,000 as detailed in paragraph 32.

41. Samples is entitled to judgment against AGH in an amount in excess of $750,000.

### Count 4 Negligence and Breach of Fiduciary Duty by Bryan Cave

Paragraphs 1-41 are incorporated herein as if set forth fully:

42. Samples entered an engagement agreement with Bryan Cave as detailed in Paragraph 20 above, whereby Bryan Cave agreed to provide a tax opinion and act as an attorney for Samples for the purposes set out in the pertinent engagement letter.

43. Bryan Cave owed Samples a duty of competence and occupied a fiduciary relationship with its client.

44. Bryan Cave deviated from the appropriate standard of care in providing advice to Samples with respect to the Coastal II investments and the tax consequences thereof including, but not limited to, advice that there was a greater than 50 percent chance that the tax treatment indicated in the opinion letter would be upheld if challenged by the Internal Revenue Service and that the Service would not be successful if it were to attempt to impose a penalty against Samples under section 6662(b)(2) or (3) for positions

taken in federal income tax returns filed with respect to the Transaction.

45. The opinions expressed by Bryan Cave were more specifically spelled out in the section of the opinion letter contained at pages 102-104 which such pages are attached hereto as Exhibit 3.

46. The opinions prepared and advice given by Bryan Cave were known to it or should have been known to it to relate to tax shelters of like kind to those declared to be abuse tax shelters, almost guaranteed to be disallowed by the Internal Revenue Service and involve risks which rendered the advice given negligent at best and careless and grossly negligent at worst.

47. Samples relied on Bryan Cave in a fiduciary relationship, and expected independent legal advice. Samples believes that Bryan Cave had ongoing relationships with Cantley and Sedacca and related entities for referral of common trust fund investments the full scope of which such relationships were not disclosed to Samples and which relationships influenced Bryan Cave and caused a conflict in its interest in serving Samples.

48. As the direct and proximate cause of the negligence and breach of fiduciary duties by Bryan Cave, Samples has suffered damages in an amount in excess of $750,000 in the same fashion and in the same amounts as set forth in paragraph 32, above.

## VI. PRAYER

Plaintiff prays for judgment in his behalf as specified above, for damages in the amount in excess of $750,000, legal fees, pre and post judgment interest and for such

other and further relief as the court deems equitable and just.

                                       Lee Thompson, # 08361
                                       THOMPSON LAW FIRM, LLC
                                       106 E. 2nd Street
                                       Wichita, Kansas  67202
                                       Telephone:     (316) 267-3933
                                       Fax:              (316) 267-3901
                                       E-mail:lthompson@tslawfirm.com

                                       **ATTORNEYS FOR PLAINTIFF**
                                       **JOHN SAMPLES**

                             By: __**s/ Lee Thompson**_____
                                     Lee Thompson

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all claims so triable by a jury.

                                       ____**s/ Lee Thompson**_____

## DESIGNATION OF PLACE OF TRIAL

The Plaintiff hereby designates Wichita, Kansas as the Place of Trial.

                                       ____**s/ Lee Thompson**_____